UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

                                                                                                 S5 19 CR 536 (PKC)

          -against-                                           OPINION AND ORDER

DEE JAY WHITE (4),

                      Defendant.
-----------------------------------------------------------x
CASTEL, U.S.D.J.

        Defendant Deejay White is charged in a superseding indictment with substantive Hobbs Act robbery, conspiracy to commit Hobbs Act robbery, conspiracy to distribute narcotics and brandishing a firearm during a drug trafficking crime. He now moves to exclude all evidence obtained pursuant to a warrant for historical cell site location data. In the alternative, he asks for a hearing pursuant to <u>Franks v. Delaware</u>, 438 U.S. 154 (1978). According to White, the warrant application lacked probable cause, omitted material facts, and failed to describe the evidence sought. For the reasons explained below, the motion will be denied.

BACKGROUND

        The acts underlying the indictment stem from the May 2019 robbery of a drug trafficker's apartment in the Bronx. As the criminal complaint sets out, White is accused of participating with three other individuals in the robbery. (Def. Mem. – Ex. 2 (Criminal Complaint) at ¶ 8.) During the robbery, a firearm was discharged, and an individual was shot in the head area. (<u>Id</u>. at ¶ 9c.) The robbers fled the apartment with four to five duffel bags each filled with approximately 20 kilograms of cocaine. (<u>Id</u>. at ¶ 9d.) Surveillance video footage from outside of the apartment building shows one of the robbers placing a duffel bag into the backseat of a car waiting outside of the apartment before escaping on foot. (<u>Id</u>. at ¶ 9f.)

From the surveillance video, law enforcement were able to determine the make, model, and license plate of the vehicle. (Def. Mem. – Ex. 1 (Warrant Application) at ¶ 10e.) The vehicle was registered in the name of Dawntiana King, the wife of White. (Id. at ¶ 11a.) Law enforcement databases revealed that the car was "affiliated" with White. (Id.) The nature of the "affilia[tion]" is not explained in the warrant application. The criminal complaint filed one month later explains that White was the driver of the vehicle during a June 1, 2018 traffic stop, and the vehicle was parked outside of his residence from at least July 2, 2019 through November 19, 2019. (Criminal Complaint at ¶ 10d–10e.)

The warrant application sought the cell site location data of two phone numbers subscribed to White. The agent's affidavit specifically stated that the warrant sought "evidence concerning the Target Subject's locations during the conspiracy, including around the approximate time of the Robbery and in its aftermath. . . ." (Warrant Application at 7, ¶ 13.) On October 16, 2019, Magistrate Judge Stewart D. Aaron approved the warrant.

The production of data sought by the warrant revealed that one of White's phones connected to a cell site located 5 blocks from the robbery, less than an hour before it occurred. (Gov. Mem. at 3.) Less than an hour after the robbery, it again connected to a cell site, this time located four miles away. (Id.) On November 25, 2019, White was arrested pursuant to the criminal complaint. He consented to the search of the two cell phones, waived his Miranda rights and gave law enforcement information about an apartment in the Bronx that was used to store narcotics trafficking proceeds. The apartment was eventually searched, and law enforcement discovered $250,000 in proceeds.

LEGAL STANDARD

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  "To prevent . . . 'general, exploratory rummaging in a person's belongings' and the attendant privacy violations,' the Fourth Amendment provides that 'a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity.' " United States v. Galpin, 720 F.3d 436, 445 (2d Cir.2013) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971) and Kentucky v. King, 563 U.S. 452, 459 (2011)).  "[A] warrant will issue only if: (1) the Government establishes probable cause to believe the search will uncover evidence of a specific crime; and (2) the warrant states with particularity the areas to be searched and the items to be seized." United States v. Ganias, 755 F.3d 125, 134 (2d Cir. 2014) (citing Galpin, 720 F.3d at 445).

In a warrant for an evidentiary search, probable cause is any information that indicates a "fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983).  Probable cause cannot be "conclusory allegations in an affidavit; the warrant application must contain sufficient factual information for the judicial officer to make an independent probable cause determination." United States v. Christopher, 19 cr 875, 2020 WL 5518216, at *2 (S.D.N.Y. Sept. 13, 2020) (Swain, J) (citing United States v. Rutherford, 71 F. Supp. 3d 386, 392 (S.D.N.Y. 2014)).  The factual information "must be contained within the four corners of a written affidavit given under oath." United States v. Falso, 544 F.3d 110, 122 (2d Cir. 2008) (citation omitted).

"A magistrate's 'determination of probable cause should be paid great deference

by reviewing courts.' " Gates, 462 U.S. at 236 (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)). Similarly, the Supreme Court has held that there is "a presumption of validity with respect to the affidavit supporting the search warrant." Franks, 438 U.S. at 154. "In certain circumstances, however, a defendant may challenge the truthfulness of factual statements made in the affidavit, and thereby undermine the validity of the warrant and the resulting search or seizure." United States v. Awadallah, 349 F.3d 42, 64 (2d Cir. 2003). In order to make such a challenge, a defendant must "make[] a preliminary showing that the government's affidavit misstated or omitted material information. . . ." United States v. Rajaratnam, 719 F.3d 139, 147 (2d Cir. 2013). To demonstrate materiality, the defendant "must show that (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the judge's probable cause finding." Rajaratnam, 719 F.3d at 146 (quoting United States v. Canfield, 212 F.3d 713, 717-18 (2d Cir. 2000)).

DISCUSSION

> A. The Warrant Application Was
>    Supported By Probable Cause.

White argues that the warrant application lacked probable cause because it did not provide sufficient indicia that the law enforcement databases linking the vehicle to him were reasonably reliable. The application, specifically the affidavit of NYPD Officer Kieran Keenaghan, stated that "Vehicle-1, with License Plate-1, is registered in the name of 'Dawntiana King' and is affiliated in law enforcement databases with King's husband, Deejay White, a Target Subject of this investigation." (Warrant Application at 6, ¶11a.) White's argument is *not* that the databases were actually unreliable. Rather, he argues that the warrant should have included further details about the affiliation that would assure the magistrate of the database's

reliability.

In support of his argument, White cites several cases where law enforcement relied solely on an erroneous database for a probable cause determination. See e.g., Gonzalez v. United States Immigration & Customs Enf't, 975 F.3d 788, 819 (9th Cir. 2020); United States v. Esquivel-Rios, 725 F.3d 1231, 1238 (10th Cir. 2013); People v. Peterson, 110 Misc.2d 875, 443 N.Y.S.2d 298 (N.Y. Crim. Ct. 1981). He also cites Smith v. Oklahoma City, a Tenth Circuit case where the court held that database information was "generally reliable," but took issue with a parking ticket database that did not accurately track who owned a vehicle at the time it was ticketed. 696 F.2d 784, 786–88 (10th Cir. 1983).

These cases are inapposite. As White acknowledges, database information can support a probable cause determination. Herring v. United States, 555 U.S. 135, 146–47 (2009); see also Hughes v. McWilliams, 04 cv 7030, 2009 WL 4823940, at *3 (S.D.N.Y. Dec. 15, 2009) (Wood, J) ("In general, a police officer can rely on information obtained from a police computer database to establish probable cause.").

The warrant application states that surveillance video captured footage of a vehicle involved in a robbery. (Warrant Application at 8, ¶ 10d.) Based on the video footage, which captured the physical characteristics and Pennsylvania license plate of the vehicle, law enforcement were able to locate the vehicle in "Department of Motor Vehicle databases." (Id. at ¶ 10e.) The databases, along with the officer's investigation, revealed that the vehicle, at the time of the offense, was registered to White's wife. (Id.) Further, White is "affiliated" with the vehicle in "law enforcement databases." (Id. at ¶ 11.) Probable cause was thus derived from multiple databases confirming White's affiliation with the vehicle, and his wife's ownership of it. This is far from a case where "the government relies solely on a computer database. . . ."

5

Gonzalez, 975 F.3d at 819.  The magistrate was entitled to grant the warrant on the basis of this probable cause.

### B. The Warrant Application Adequately Stated the Specific Place to Be Searched and the Evidence Sought.

White next argues that the warrant application failed to allege facts suggesting that the place to be searched would contain evidence of a crime.  As the Supreme Court has held, the "task of the issuing magistrate" is to determine whether there is "a fair probability that contraband or evidence of a crime will be found in a particular place."  Gates, 462 U.S. at 238.  "The particularity requirement has three components.  First, a warrant must identify the specific offense for which the police have established probable cause."  Galpin, 720 F.3d at 445 (internal citations and quotations omitted); see also United States v. Purcell, 967 F.3d 159, 178 (2d Cir. 2020).  "Second, a warrant must describe the place to be searched."  Galpin, 720 F.3d at 445–46.  "Third, the warrant must specify the items to be seized by their relation to the designated crimes."  Id. at 446.  "A warrant must be 'sufficiently specific to permit the rational exercise of judgement in selecting what items to seize.' "  United States v. Liu, 239 F.3d 138, 140 (2d Cir. 2000) (quoting United States v. LaChance, 788  F.2d 856, 874 (2d Cir. 1986)).  The warrant application for White's cellular location information was more than adequate when describing what kind of information was sought, and why it would likely yield evidence for the robbery.

The application states that "[t]he Government seeks historical cell site data for Target Cellphones for the period from March 1, 2019 through the date of this Order. . . ." (Warrant Application at 1, ¶ 3.)  It gives a detailed explanation of the types of cell site location information it seeks, how that information is collected, and how precise it can be.  (Id. at 5, ¶ 5.) It explains why the two cell phone numbers are targeted.  (Id. at ¶ 4.)  It explains why White is a subject of the robbery investigation.  (Id. at 7–9, ¶¶ 10–11.)  This is enough to comport with the

6

Fourth Amendment's requirement to describe the place to be searched and the things to be seized.

White asserts that the application "is entirely silent" on why the AT&T databases containing the location data would yield evidence. True, portions of Officer Keenaghan's affidavit detail what evidence might exist on the phones themselves, rather than the databases. (Warrant Application at 8–9, ¶¶ 12–13.) But these paragraphs also explicitly state that the type of evidence sought included "evidence concerning the Target Subjects' locations during the conspiracy, including around the approximate time of the Robbery and in its aftermath. . . ." (Id. at ¶ 13.) Moreover, these paragraphs are surplusage. The preceding 11 paragraphs thoroughly explain the types of cell site location information sought, and why this information was necessary to the investigation.

"Courts have repeatedly been warned not to 'interpret[] the affidavit in a hypertechnical, rather than commonsense, manner'" as the affidavits are "normally drafted by nonlawyers in the midst and haste of a criminal investigation.' " Canfield, 212 F.3d at 719 (quoting United States v. Ventresca, 380 U.S. 102, 108–09 (1965)). Reading the affidavit "as a whole," it is clear that the cell site location data was targeted to ascertain White's location at the time of the robbery, once it was determined that a vehicle associated with him was filmed at the scene. Id. Accordingly, the warrant application sufficiently stated the place to be searched and the evidence sought.

> C. White is Not Entitled to a *Franks* Hearing

In the alternative, White argues that he is entitled to a Franks hearing because the government omitted material facts from the warrant application and relied upon stale information. The allegedly omitted facts are that the affiliation in "law enforcement databases"

7

between White and the vehicle caught on camera was based on a single instance in 2018 where the vehicle was pulled over with White as the driver.  A public-records search performed by White's attorney revealed that the vehicle has been cited for school zone speed camera violations several times since May 2016, though no driver information was available.  According to White, neglecting to disclose that the affiliation was based on a single 2018 instance, and that the vehicle had been stopped several other times, misled the magistrate to find that probable cause existed.  His argument fails for several reasons.

First, White's asserted omissions are immaterial, in that they were not necessary to the finding of probable cause.  As the Second Circuit has held, "gaug[ing] materiality [is] a process of subtraction."  Awadallah, 349 F.3d at 65.  "[A] court should disregard the allegedly false statements and determine whether the remaining portions of the affidavit would support probable cause to issue the warrant."  Id. (quoting Canfield, 349 F.3d at 718)).  Because "omissions, by their nature, cannot be deleted," the Court "insert[s] the omitted truths revealed. . . ." Rajaratnam, 719 F.3d at 146 (quoting United States v. Ippolitio, 774 F.2d 1482, 1487 n.1 (9th Cir. 1985)).  "The ultimate inquiry is whether, after putting aside erroneous information and [correcting] material omissions, there remains a residue of independent and lawful information sufficient to support [a finding of] probable cause [or necessity]."  Rajaratnam, 719 F.3d at 146 (alterations in original) (quoting Canfield, 212 F.3d at 718).

Including the additional facts proffered by White, the warrant application would state the following: using video footage from the robbery and Department of Motor Vehicle databases, law enforcement were able to determine that White's spouse was the registered owner of the vehicle at the time that the robbery occurred.  Law enforcement databases indicated that White was affiliated with the vehicle.  This affiliation was based on a 2018 vehicle stop, in

8

which White was the driver.  The car has had several school zone speed infractions since 2015, but the driver at the time of these infractions was either not White, or not determinable.  This is enough to support a finding of probable cause.  White had been the driver of the vehicle in 2018 that his wife owned at the time of the robbery.  There "remains a residue of independent and lawful information sufficient to support probable cause."  United States v. Ferguson, 758 F.2d 843, 849 (2d Cir. 1985).

Though White asserts that the 2018 traffic stop is too stale to have been relied on to support the finding of probable cause, this stop is viewed in light of the rest of this information in the warrant application.  There is "no bright-line rule for staleness."  Walczyk v. Rio, 496 F.3d 139, 162 (2d Cir. 2007).  It depends "on the basis of the facts of each case."  United States v. Martino, 664 F.3d 860, 867 (2d Cir. 1981).  Given that individuals often own vehicles for longer than one year, and the vehicle was registered in his spouse's name at the time of the robbery, the June 1, 2018 stop presents no staleness issue as to the October 16, 2019 warrant application for information dating back to March 1, 2019.

Nor has White demonstrated that the alleged omissions were made intentionally or recklessly.  "[E]ven if the misrepresented or omitted information was material, a motion to suppress is to be denied unless the misrepresentations or omissions were intentional or deliberate, or were made in reckless disregard for the truth."  United States v. Lambus, 897 F.3d 368, 399 (2d Cir. 2018) (citing Franks, 438 U.S. at 155–56)).  In a conclusory manner, White labels the government's supposed "mishandling of the facts" as "intentional or recklessly negligent" based on the "extraordinary tenuousness" of the affiliation between White and the vehicle.  (Def. Mot. at 17–18.)  Nothing more is provided.  A warrant applicant "does not necessarily act with reckless disregard for the truth simply because he or she omits certain

9

evidence . . . Rather, the reviewing court must be presented with credible and probative evidence that the omission . . . was designed to mislead or was made in reckless disregard of whether it would mislead." Rajaratnam, 349 F.3d at 154 (quoting Awadallah, 349 F.3d at 68). Though recklessness "may be inferred where the omitted information was clearly critical to the probable cause determination," in light of the probable cause existing within the warrant application, such an inference is not proper. Without having made this showing, White is not entitled to a Franks hearing.

CONCLUSION

For these reasons, White's motion to suppress the evidence recovered pursuant to the warrant for historical cell site location data is DENIED. Because the motion is denied, the Court need not address the applicability of the good faith exception articulated in United States v. Leon, 468 U.S. 897 (1984). The Clerk is directed to terminate the motion (Doc 92). The hearing on May 4, 2021 is vacated. The next conference in this matter is scheduled for July 21, 2021.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
       April 27, 2021

10